IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LEE A. ISRAEL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No.14-1315-SLR |
| | ) |
| WARDEN DAVID PIERCE, et al., | ) |
| | ) |
| Defendants. | ) |

Lee A. Israel, James T. Vaughn Correctional Center, Smyrna, Delaware. Pro se Plaintiff.

Roopa Sabesan, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Counsel for Defendants.

**MEMORANDUM OPINION**



RECEIVED JAN 25 2017 U.S. DISTRICT COURT DISTRICT OF DELAWARE

Dated: January 25, 2017
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

Plaintiff Lee A. Israel ("plaintiff" or "Israel"), an inmate at the James T. Vaughn Correctional Center ("VCC"), Smyrna, Delaware, proceeds pro se and has been granted leave to proceed in forma pauperis. He filed this civil rights lawsuit on October 16, 2014, pursuant to 42 U.S.C. § 1983 alleging retaliation against defendants Warden David Pierce ("Pierce") and C/O Ronald Holcome ("Holcome")[1] (together "defendants").[2] (D.I. 3) An amended complaint was filed on August 5, 2015. (D.I. 21) The court has jurisdiction pursuant to 28 U.S.C. § 1331. Before the court are plaintiff's motion to compel (D.I. 32) and defendants' motion for summary judgment (D.I. 39). For the reasons discussed, the court will deny as moot plaintiff's motion to compel (D.I. 32) and will grant defendants' motion for summary judgment (D.I. 39).

## II. BACKGROUND

The amended complaint alleges that Holcome retaliated against plaintiff for submitting a grievance and writing a letter to the Delaware Department of Correction ("DOC") Commissioner. (D.I. 32 ¶¶ 20-21) It alleges that Pierce retaliated against plaintiff when he failed to protect plaintiff from the unfair treatment. (Id. at ¶¶ 24-26) Plaintiff seeks compensatory damages and injunctive relief, including reinstatement to his prior work assignment.

Plaintiff was the lead worker assigned to W-building. (D.I. 42, Pl.'s Decl. ¶ 4) On September 6, 2013, he was suspended from his job by correctional officer Nasir Baqi

---

[1]Defendants refer to Holcome as "Holcomb."

[2]The court dismissed other claims and defendants in its January 27, 2015 screening order. (See D.I. 7, 8)

("Baqi") at the request of commissary administrator Carroll Powell ("Powell"). (*Id.* at ¶ 6) On September 8, 2013, plaintiff submitted a grievance complaining that he was removed and that he was not given a reason for his removal. (D.I. 42, ex. B) According to plaintiff, defendants have access to a computer system and are able to view grievances as they are submitted. (D.I. 42, Pl.'s Decl. ¶ 19) On September 10, 2013, plaintiff met with staff lieutenant Akinbayu ("Akinbayu") who informed plaintiff that he had been suspended pending an investigation. (D.I. 42, Pl.'s Decl. ¶ 8) On September 11, 2013, plaintiff sent a formal written complaint to DOC Commissioner Robert M. Coupe ("Coupe"), with a copy to Pierce, complaining about the suspension. (D.I. 42, Pl.'s Decl. ¶ 9, ex. A) On September 12, 2013, plaintiff was transferred to a double cell from his single cell housing, the latter a privilege that is routinely revoked when an inmate is fired from his job. (D.I. 42, Pl.'s Decl. ¶¶ 10, 20) Plaintiff's grievance was received by the IGC (*i.e.*, inmate grievance chair) Lise M. Singer ("Stinger") on September 16, 2013, and returned to plaintiff unprocessed with the notation, "Delaware is an 'at will' state employment is a privilege." (D.I. 42 at ex. B) On December 6, 2013, Bureau Chief Perry Phelps ("Phelps") responded to the letter plaintiff had written to Coupe. (*Id.* at ex. C) In his memo, Phelps advised plaintiff that he had reviewed plaintiff's file, and indicated that plaintiff was removed from work pending an investigation. (*Id.*) Plaintiff was further advised that "the Administration did not choose to return you to that employment; however kept your [sic] classified in the work pod eligible to work elsewhere." (*Id.*)

Holcome was the supervising correctional officer in the commissary during the relevant time-frame. (D.I. 42, Pl.'s Decl. ¶ 14) Baqi told Holcome that he was directed

2

to revoke plaintiff's work pass in the commissary. (D.I. 40, ex. A. at 3) Holcome was unaware of any investigation into plaintiff, his termination, the reason for plaintiff's cell transfer, or why plaintiff was not returned to work in the commissary. (*Id.* at ex. A. at 1, 7, 8, 9) According to plaintiff, in May 2014, he was told by the work pool coordinator that he had been cleared by administration to return to work for some time, but Holcome was against it. (*Id.* at ¶ 23)

On May 14, 2014, plaintiff filed a petition for writ of mandamus in the Superior Court of the State of Delaware in and for New Castle County, *Israel v. Coupe*, C.A. No. N14M-05-11 WCC, seeking restoration of his inmate job or a position equal to his previous job in the commissary. The petition was filed against Coupe, Phelps, and Pierce and refers to the September 6, 2013 job suspension, investigation, and plaintiff's continued unemployment even though he is classified to the work pool.[3] Respondents were granted summary judgment on November 25, 2014. *See Israel v. Coupe*, 2014 WL 7740426 (Del. Super. Nov. 25, 2014). The Delaware Superior Court concluded that Israel was unable to establish a clear legal right to employment, or that work classifications of an inmate are a non-discretionary duty of respondents. On June 1, 2015, the Delaware Supreme Court affirmed the decision of the Superior Court. *See Israel v. Coupe*, 115 A.3d 1215 (Del. 2015) (table).

## III. MOTION TO COMPEL

In December 2015, plaintiff served discovery request upon defendants. (D.I. 29-31) When defendants failed to respond to the requests, plaintiff wrote them on January

---

[3]Plaintiff commenced this action while the State court action was pending.

21, 2016, advised them that their responses were a month late, and asked for an immediate response. (D.I. 32) Defense counsel did not respond to plaintiff's letter, which resulted in the motion to compel. (*Id.*)

Thereafter, defendants sought an extension of time to respond to the discovery. (D.I. 33) It was granted, and defendants were given until on or before April 19, 2016 to respond to the discovery. (D.I. 34) Defendants timely responded to plaintiff's discovery requests. (D.I. 35-38) Accordingly, the motion to compel will be denied as moot.

## IV. MOTION FOR SUMMARY JUDGMENT

### A. Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). A party asserting that a fact cannot be--or, alternatively, is--genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motions only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing

4

that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted). The court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

At the summary judgment stage, the judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The judge must ask not whether the evidence unmistakably favors one side or the other, but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. *Id.* at 252. The court must not engage in the making of "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts" as these "are jury functions, not those of a judge, [when] [] ruling on a motion for summary judgment." *E.E.O.C. v. GEI Group, Inc.*, 616 F.3d 265, 278 (3d Cir. 2010) (citation omitted).

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586-87; *see also Podobnik v. U.S. Postal Service*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). Although the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment," a factual dispute is genuine where "the

evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. at 247-48. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). The same standards and burdens apply on cross-motions for summary judgment. *See Appelmans v. City of Philadelphia*, 826 F.2d 214, 216 (3d Cir. 1987).

Defendants move for summary judgment on the grounds that: (1) plaintiff's claims are barred by reason of res judicata; and, in the alternative (2) plaintiff has not established the elements of a § 1983 retaliation claim.

## B. Discussion

### 1. Claim Preclusion

Defendants contend that, because plaintiff has already litigated his termination from employment in State court, res judicata precludes him from raising his claims in this court. Plaintiff opposes the motion on the grounds that the claim raised in the State court sought issuance of a writ of mandamus to compel State respondents to adhere to DOC policy, while the instant complaint raises retaliation claims pursuant to 42 U.S.C. § 1983.

The doctrine of preclusion limits a party's ability to raise claims that either were or could have been litigated in a prior action. *See Reaves v. Pennsylvania Board of*

*Prob. & Parole*, 580 F. App'x 49, 52 (3d Cir. 2014) (unpublished). Claim preclusion, formerly referred to as res judicata, bars a claim litigated between the same parties or their privies in earlier litigation where the claim arises from the same set of facts as a claim adjudicated on the merits in the earlier litigation. *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 276 (3d Cir. 2014). Res judicata bars not only claims that were brought in the previous action, but also claims that could have been brought. *Id.* at 277 (citations omitted). "A claim extinguished by res judicata includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." *Id.* (citations omitted).

"Claim preclusion requires: (1) a final judgment on the merits in a prior suit involving; (2) the same parties or their [privies]; and (3) a subsequent suit based on the same cause of action." *Id.* at 276 (citations omitted). When analyzing whether the elements have been met, the court does not apply this conceptual test mechanically, but focuses on the central purpose of the doctrine, to require a plaintiff to present all claims arising out of the same occurrence in a single suit. *Id.* at 277. This avoids piecemeal litigation and conserves judicial resources. *Id.* (citations omitted).

The court takes "a broad view of what constitutes the same cause of action and res judicata generally is thought to turn on the essential similarity of the underlying events giving rise to the various legal claims." *Id.* (citations omitted). When analyzing essential similarity, several factors are considered: (1) whether the acts complained of

7

and the demand for relief are the same; (2) whether the theory of recovery is the same; (3) whether the witnesses and documents necessary at trial are the same; and (4) whether the material facts alleged are the same. See id. (citations omitted). It is not dispositive that a plaintiff asserts a different theory of recovery or seeks different relief in the two actions. Id. (citations omitted); see also Elkadrawy v. Vanguard Grp., 584 F.3d 169, 173 (3d Cir. 2009) ("This analysis does not depend on the specific legal theory invoked, but rather [on] the essential similarity of the underlying events giving rise to the various legal claims.) (internal quotation marks omitted)."

Here, there is a final judgment on the merits, the Delaware Supreme Court having affirmed the dismissal of the case by the Superior Court. See Israel v. Coupe, 115 A.3d 1215 (Del. 2015) (table). Also, the requirement that the same parties or their privies be involved is met. Pierce was a defendant in the mandamus action and, although Holcome was not, he was in privity with Pierce. "Privity 'is merely a word used to say that the relationship between one who is a party on the record and another is close enough to include that other within the res judicata." Shah v. United States, 540 F. App'x 91, 93 (3d Cir. 2013) (unpublished) (quoting Marran v. Marran, 376 F.3d 143, 151 (3d Cir. 2004) and Equal Employment Opportunity Comm'n v. U.S. Steel Corp., 921 F.2d 489, 493 (3d Cir. 1990). Because "there is privity between officers of the same government," a judgment in one suit between a party and a representative of the United States precludes relitigation of the same issue between that party and a different government officer in a later suit." Sunshine Anthracite Coal, Inc., 310 U.S. 381, 402-03 (1940); see also Nelson v. Brown, 2014 WL 1096189 at *7 (S.D. Cal. 2014) (warden

8

named in habeas petition and correctional officers named in civil rights action in privity). In the instant case, plaintiff raises a retaliation claim against Holcome that turns upon events essentially the same as those in the petition for a writ of mandamus filed in State court. In addition, the record reflects that when plaintiff filed the petition in State court, Holcome was known to him. *See Central Hudson Gas & Electric Corp. v. Empresa Naviera Santa S.A.*, 56 F.3d 359, 367-68 (2d Cir.1995). ("[T]he principle of privity bars relitigation of the same cause of action against a new defendant known by a plaintiff at the time of the first suit where the new defendant has a sufficiently close relationship to the original defendant to justify preclusion").

Finally, in both cases, plaintiff seeks reinstatement to his prior inmate job. The claims in the instant complaint, while not identical, could have been raised in plaintiff's prior State action given that they arise from the same set of facts or claims adjudicated on the merits in plaintiff's earlier mandamus proceeding. *See Israel v. Coupe*, 2014 WL 7740426 (Del. Super. Nov. 25, 2014), *aff'd*, 115 A.3d 1215 (Del. 2015) (table) (against Coupe, Phelps, and Pierce, challenging plaintiff's suspension, investigation, and termination from his prison job, seeking mandamus relief and finding Israel failed to state a claim).

The conditions for claim preclusion are satisfied and, hence, plaintiff's claims are barred. Therefore, the court will grant defendants' motion for summary judgment.

### 2. Retaliation

Even were the court to consider the merits of plaintiff's claim, summary judgment for defendants is appropriate because the elements of a § 1983 retaliation claim have

9

not been met. Plaintiff alleges that Holcome retaliated against him for submitting a grievance and writing a letter to the DOC Commissioner and that Pierce failed to protect plaintiff from the alleged retaliatory action.

"Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under § 1983." *White v. Napoleon*, 897 F.2d 103, 111-12 (3d Cir. 1990). It has long been established that the First Amendment bars retaliation for protected speech. *See Crawford-El v. Britton*, 523 U.S. 574, 592 (1998); *Milhouse v. Carlson*, 652 F.2d 371, 373-74 (3d Cir. 1981). Proof of a retaliation claim requires plaintiff to demonstrate that: (1) he engaged in protected activity; (2) he was subjected to adverse actions by a state actor; and (3) the protected activity was a substantial motivating factor in the state actor's decision to take adverse action. *Carter v. McGrady*, 292 F.3d 152, 158 (3d Cir. 2002) (citing *Mt. Healthy Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *see also Allah v. Seiverling*, 229 F.3d 220 (3d Cir. 2000) (a factfinder could conclude that retaliatory placement in administrative confinement would "deter a person of ordinary firmness from exercising his First Amendment rights" (citations omitted)). The causation element requires a plaintiff to prove either: (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action; or (2) a pattern of antagonism coupled with timing to establish a causal link. *See Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007); *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 503-04 (3d Cir. 1997). "[O]nce a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still

prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." *Rauser v. Horn*, 241 F.3d 330, 334 (3d Cir. 2001). When analyzing a retaliation claim, courts consider that the task of prison administrators and staff is difficult, and that the decisions of prison officials require deference, particularly where prison security is concerned. *Rauser*, 241 F.3d at 334.

The evidence of record is that on September 6, 2013, plaintiff was suspended from his job by C/O Baqi at the request of commissary administrator Powell, and that two days later, plaintiff submitted a grievance complaining about his removal. Four days after he was removed from his position, plaintiff was advised by staff lieutenant Akinbayu that he had been suspended pending an investigation. The next day, plaintiff sent a written complaint to Coupe, with a copy to Pierce, complaining about the suspension. Plaintiff's grievance was received by the IGC (*i.e.*, inmate grievance chair) on September 16, 2013, and returned to plaintiff unprocessed. In December 2013, Phelps told plaintiff why he had been removed from his work assignment, that the administration did not choose to return plaintiff to that work assignment, and that plaintiff was classified as eligible to work elsewhere. According to plaintiff, in May 2014, he was told by the work pool coordinator that the administration had cleared him to return to work for some time (as Phelps had told him in December 2013), but Holcome was against his return.

The record reflects that Holcome was the supervising correctional officer in the commissary during the relevant time-frame and that Baqi told Holcome he had been directed to revoke plaintiff's work pass. Holcome was unaware of any investigation into

11

plaintiff, plaintiff's termination, the reason for plaintiff's cell transfer, and why plaintiff was not returned to work in the commissary. According to plaintiff, defendants have access to a computer system and are able to view grievances as they are submitted, but there is no evidence that Holcome saw or was aware of plaintiff's grievance.

Plaintiff's September 8, 2013 grievance is a form of protected speech. In addition, the court assumes without deciding, that plaintiff's September 11, 2013 letter to Coupe is also a form of protected speech. Hence, plaintiff has met the first element of a retaliation claim. At least as to Holcome, there is no evidence that Holcome was aware of the grievance or the letter.[4] Notably, the grievance and letter were submitted following plaintiff's removal from his job, not before. Further, the evidence of record does not support a finding that either defendant had personal involvement in plaintiff's removal from his work assignment or ultimate termination, a necessary element of his § 1983 claim.

"A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Here, the record reflects that plaintiff was removed from his position upon the direction of commissary administrator Powell: not by warden Pierce and not by C/O Holcome. Also, nothing in the record suggests

---

[4] It is undisputed that a copy of the Coupe letter was sent to Pierce. The letter to Coupe refers to plaintiff's grievance, but the record does not reflect that Pierce saw a copy of the grievance. (*See* D.I. 42, ex. A)

12

that either Pierce or Holcome were involved in, or aware of, the investigation that led to plaintiff's removal from the position and ultimate loss of the work assignment. In light of the foregoing, the court concludes that no reasonable jury could find for plaintiff on his § 1983 retaliation claim. Therefore, the court will grant defendants' motion for summary judgment.

## V. CONCLUSION

For the above reasons, the court will: (1) deny as moot plaintiff's motion to compel (D.I. 32); and (2) grant defendants' motion for summary judgment (D.I. 39)

A separate order shall issue.